**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**LYNETTE HOLLAND,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　**Case No.:**

**WIPRO, LLC,**

    **Defendant.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff LYNETTE HOLLAND ("Plaintiff"), sues the Defendant WIPRO, LLC (herein after "WIPRO" or "Defendant") and in support thereof states as follows:

**JURISDICTION & VENUE**

1. The Court has original jurisdiction over Plaintiff's Title VII of the Civil Rights Act of 1964 ("Title VII") claims pursuant to 28 U.S.C. § 1331. *See* 42 U.S.C. § 2000e *et seq*.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in DeKalb County, Georgia, which is located within the Atlanta Division of the Northern District of Georgia.

## SATISFACTION OF CONDITIONS PRECEDENT

3. On or about September 18, 2018, Plaintiff filed her Charge of Discrimination with the Equal Opportunity Commission ("EEOC"), alleging that Defendant discriminated and retaliated against her because of her sex, in violation of Title VII.

4. On May 23, 2019, the EEOC issued Plaintiff her right to sue letter.

5. Plaintiff files this action within the applicable period of limitations.

6. All conditions precedent to this action have been satisfied and/or waived.

## PARTIES

7. At all times material hereto, Plaintiff was a resident of Henry County, Georgia.

8. At all times material hereto, Defendant had its principal place of business in Chamblee, Georgia.

9. At all times material hereto, Defendant regularly and continuously engaged in business in Georgia.

10. At all times material hereto, Defendant was Plaintiff's employer within the meaning of Title VII.

11. At all times material hereto, Plaintiff was an individual and an employee of Defendant within the meaning of Title VII.

12. Harrison Williams ("Williams") is employed with Defendant and served as Plaintiff's supervisor for Defendant.

13. Williams engaged in a continuous pattern of sexual harassment of Plaintiff.

14. After Plaintiff rebuffed Williams' sexual advances, Williams begin a campaign of retaliation against Plaintiff.

15. Plaintiff made several complaints regarding Williams' harassment and retaliation.

16. Defendant failed to take prompt and appropriate action when Plaintiff complained to Defendant.

17. Defendant then terminated Plaintiff because of her multiple complaints regarding Williams' conduct.

18. Defendant is liable for Plaintiff's claims.

## FACTS

19. Defendant is, and at all relevant times material to this action, a multinational corporation that provides information technology, consulting and business process services company.

20. Plaintiff was hired by Defendant on August 10, 2017 in the position of Team Lead/Floor Supervisor.

21. I reported directly to Harrison Williams, Operations Manager.

22. Initially, Williams and I got along well and I had no performance or disciplinary issues.

23. However, a short time later, Williams asked Plaintiff to stay behind after a meeting until everyone had left the room. Once Williams and Plaintiff were alone, Williams approached Plaintiff and placed his hand in the small of Plaintiff's back so that his hand was resting on the top of Plaintiff's buttocks. Shocked by his actions, Plaintiff immediately removed Williams' hand and stepped away and told Williams, "that's not going to happen."

24. The next day, Plaintiff noticed Williams' demeanor towards her had changed and Williams had turned cold.

25. Thereafter, Williams' cold demeanor towards Plaintiff continued and a few days later, Williams yelled at Plaintiff on the floor in front of Plaintiff's team members, without justification. This behavior continued. For the next few weeks, Williams intensified his negative conduct towards Plaintiff including continued yelling at and berating Plaintiff as well as making threats that he was going to fire Plaintiff.

26. Because Williams' behavior Plaintiff had become intolerable, Plaintiff decided to go to Human Resources to complain about Williams' behavior. Plaintiff explained that Williams had touched her inappropriately and when she rebuffed his actions, he started retaliating against her by constantly yelling at her and threatening to terminate her employment.

27. Although Human Resources said they would look into the matter, nothing was ever done and Plaintiff never heard back from Human Resources.

28. Instead, shortly after Plaintiff's complaint to Human Resources, Williams called Plaintiff into his office and said to Plaintiff, "you will never tell Human Resources on me again" and threatened to have Plaintiff terminated.

29. As a result of Plaintiff's threats, I became afraid for my job and suffered extreme anxiety and stress.

30. Thereafter, Williams was true to his word. Williams removed Plaintiff from all of my work assignments and had her doing the same work as the team members she was supposed to be supervising. Accordingly, Williams had demoted Plaintiff.

31. Plaintiff should not have been removed from her Team Lead/Floor Supervisor duties because her quarterly performance reviews were good. Williams'

abusive conduct towards intensified even more. Plaintiff became physically ill and later learned from her doctor that she nearly had a stroke.

32. Plaintiff then decided to make a second complaint. This time, Plaintiff complained directly to Williams' supervisor regarding Williams' retaliatory behavior.

33. In addition, Plaintiff also sent several complaints via email through the Safe Workplace email portal. Again, no action was taken regarding these complaints.

34. In April 2018, Plaintiff decided to complain to Human Resources again because a new Director of Human Resources, Marcella Westfall, was there. Plaintiff explained to Ms. Westfall, what she experienced at the hands of Williams and the fact that his retaliation continued. Members of Plaintiff's team also reported Williams' conduct towards Plaintiff to Ms. Westfall.

35. As a result of Ms. Westfall's investigation, in June 2018, a decision was made to move Plaintiff to a new work location, away from Williams and to a new team and supervisor. After the move, Plaintiff had further contact with Williams because he no longer supervised her and she worked in a different location.

36. However, during the beginning of August, 2018, Plaintiff learned that

the company was downsizing and that Plaintiff, and others, had to relocate back to the old building where Williams was still working. Although Williams was no longer Plaintiff's supervisor, Plaintiff was uncomfortable working in the same building with him again.

37. Indeed, Plaintiff started having anxiety attacks at the mere thought of having to work near Williams again.

38. Three days after relocating to the old building, Plaintiff was called into Human Resources office and informed that a co-worker had allegedly reported that Plaintiff threatened to bring a gun to work and shot Williams. Plaintiff denied that she ever told anyone this and indeed, never even thought of such a thing.

39. Plaintiff was nonetheless terminated from her employment on August 15, 2018.

40. Plaintiff was terminated because of her multiple complaints about Williams' retaliatory treatment because she rebuffed his sexual advances and the fact that she complained about his retaliatory treatment following her rejection of his sexual advances.

### COUNT I - DISCRIMINATION/HARASSMENT IN VIOLATION OF TITLE VII
### (SEXUAL HARRASSMENT)

41. Plaintiff re-alleges and readopts the allegations contained in paragraphs 1-40 as if fully set forth herein.

42. Defendant, through its employees and agents, created an intimidating, hostile, and offensive working environment by subjecting Plaintiff to unwelcome sexual advances because of her sex.

43. Defendant's sexual harassment, by and through its agents and employees, violated Plaintiff's rights to be free from harassment and discrimination because of her sex under Title VII.

44. The conduct of Defendant and its agents and employees, proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

45. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

46. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

## **COUNT II - RETALIATION IN VIOLATION OF TITLE VII**

47. Plaintiff re-alleges and readopts the allegations contained in paragraphs 1- 40, as if fully set forth herein.

48. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against sexually harassment under Title VII.

49. Plaintiff objected to Defendant's sexual harassment.

50. In response to Defendant's objection to sexual harassment, Defendant retaliated against Plaintiff by treating Plaintiff differently, taking away her job duties, yelling at and intimidating Plaintiff and constantly threatening to have Plaintiff terminated.

51. Defendant's retaliation violated Plaintiff's rights under Title VII.

52. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

53. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of

punitive damages against Defendant, to deter it, and others, from such conduct in the future.

54. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. That the Court enters judgment for Plaintiff on all claims for relief asserted in the complaint;

b. An award of back pay;

c. An award of front pay;

d. An award of compensatory damages;

e. An award of punitive damages;

f. An award of pre and post-judgment interest;

g. An award of reasonable attorneys' fees and costs;

h. Any other relief that this Court deems just and proper, and all other relief available under Title VII.

## FONT CERTIFICATION

Pursuant to Local Rule 5.1(C) Plaintiff hereby certifies that the within and foregoing Complaint was prepared using Times New Roman, 14-point font.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury.

Respectfully submitted on this 5th day of August, 2019.

**s/ ANTHONY J. HALL**
**Anthony J. Hall, Esq.**
Georgia Bar No.: 318028
Morgan & Morgan, P.A.
20 N. Orange Ave., 14th Floor
Orlando, FL 32802-4979
MAILING: P.O. Box: 530244
Atlanta, GA 30353-0244
Direct Tel.:  (407) 418 2079
Facsimile:   (407) 245-3390
Email:       ahall@forthepeople.com
Counsel for Plaintiff
